UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, 100 F. Street, NE Washington, D.C. 20549-6030 ) ) ) ) ) ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| v. ) | |
| ) | |
| AKZO NOBEL N.V. Strawinskylaan 2555 1077 ZZ Amsterdam The Netherlands ) ) ) ) ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission (the "Commission"), alleges that:

### SUMMARY

1.    From approximately 2000 through 2003, Akzo Nobel N.V. ("Akzo Nobel") violated the books and records and internal controls provisions of the Foreign Corrupt Practices Act (the "FCPA") when two of its subsidiaries authorized and made approximately $279,491 in kickback payments in connection with their sales of humanitarian goods to Iraq under the United Nations ("U.N.") Oil for Food Program. Akzo Nobel's subsidiaries authorized and paid kickbacks to Iraq on sales of its products to Iraq. The kickbacks were called "after-sales service fees" in Iraq. Akzo Nobel knew or was reckless in not knowing that kickbacks were paid in connection with those

transactions. Akzo Nobel knew that such payments were prohibited by the Oil for Food Program and U.S. and international trade sanctions on Iraq.

2.     The Oil for Food Program provided humanitarian relief to the Iraqi population during the time that Iraq was subject to international trade sanctions. The program required that Iraq could purchase necessary humanitarian goods and related services through a U.N. escrow account. However, the kickbacks paid in connection with Akzo Nobel's subsidiaries' sale of goods to Iraq bypassed the escrow account and were instead paid by third parties to Iraqi-controlled accounts in banks in countries such as Lebanon and Jordan.

3.     Akzo Nobel failed to accurately record in its books and records the kickbacks that its subsidiaries authorized for payment to Iraq outside of the confines of the U.N. program. Akzo Nobel also failed to devise and maintain a system of internal accounting controls to detect and prevent such illicit payments.

4.     As a result of this conduct, Akzo Nobel violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## JURISDICTION

5.     This Court has jurisdiction over this action under Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. Akzo Nobel, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

6.     Venue is appropriate in this Court under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts or transactions constituting the violations by Akzo Nobel occurred in this district.

## DEFENDANT

7.     Akzo Nobel is a corporation organized under the laws of the Netherlands. Akzo Nobel manufactures human and animal health care products, coatings, and other chemicals. At all relevant times, Akzo Nobel's American Depositary Receipts ("ADR") were registered with the Commission pursuant to Section 12(g) [15 U.S.C. § 78l(g)] of the Exchange Act and were quoted on NASDAQ under the symbol "AKZOY." In August 2007, Akzo Nobel delisted its ADRs, and in October 2007, it terminated its registration with the Commission. Two of Akzo Nobel's subsidiaries were involved in sales to Iraq under the Oil for Food Program.

## RELEVANT ENTITIES

8.     **N.V. Organon** ("Organon") is a wholly-owned subsidiary of Akzo Nobel that manufactures and sells prescription pharmaceuticals, including hormone and anesthesia products. Organon is located in the Netherlands. In September 2007, Akzo Nobel entered into an agreement to sell Organon, which is expected to close by the end of the year.

9.     **Intervet International B.V.** ("Intervet") is a wholly-owned subsidiary of Akzo Nobel that manufactures veterinary vaccines and animal pharmaceuticals. Intervet is located in the Netherlands. In September 2007, Akzo Nobel entered into an agreement to sell Intervet, which is expected to close by the end of the year.

## FACTS

### I.    The United Nations Oil for Food Program

10.    On August 2, 1990, the government of Iraq, under Saddam Hussein, invaded Kuwait. Four days later the United Nations Security Council voted to enact U.N. Resolution 661, which prohibited member states from trading in any Iraqi commodities or products. The United Nations continued to enforce these sanctions until 2003.

11.    On April 14, 1995, the United Nations Security Council adopted Resolution 986, which authorized the Government of Iraq to sell oil on the condition that the proceeds of all of its oil sales be deposited in a bank account monitored by the United Nations and used only to purchase designated humanitarian goods for the benefit of the Iraqi people. In May 1996, the Government of Iraq entered into a written Memorandum of Understanding to implement Resolution 986.

12.    The United Nations Office of Iraq Program, Oil for Food (the "Oil for Food Program" or "Program") was subsequently established to administer Iraq's sale of oil and purchase of humanitarian goods by Iraq. A special bank account was established at a bank in New York (the "UN Escrow Account") to handle the transactions. The United Nations' economic sanctions on Iraq remained in place for all trade and transactions not authorized by the Oil for Food Program.

13.    Starting in the middle of 2000, the Iraqi government made a concerted effort to subvert the Program by demanding secret kickbacks from its humanitarian goods suppliers. Although contracts entered into pursuant to the Program were subject to UN review and approval, the Program gave Iraq discretion to select the companies from which it purchased goods. A humanitarian supplier would submit a bid for the sale of its

4

goods. After the Iraqi ministry would accept the bid, the ministry would inform the supplier of the requirement that the supplier make a secret payment, frequently in the form of an "After-Sales Service Fee" ("ASSF"), to Iraq in order to win the contract. The Iraqi ministry would also inform the supplier that the ASSF would have to be paid prior to the goods entering into the country, or the goods would be stopped at the border until the ASSF payment was paid.

14.     Initially, when this scheme first began, suppliers met with the Iraqi ministries in person and signed a side agreement acknowledging that the supplier would make the illicit payment.[1] By October 2000, this fee was usually ten percent of the total contract value. Later in the scheme, everyone understood that the ten percent would have to be paid. Thus, side agreements were no longer needed -- the supplier would simply increase its original contract bid by ten percent.

15.     The supplier would then submit its contract with the inflated contract price to the UN for approval, and not disclose the ten percent illicit payment, which was in violation of the Program rules. The supplier would pay the ASSF to Iraq prior to shipping its goods. Afterwards, the UN Escrow Account would pay the supplier the inflated contract price for the goods, thus, unknowingly reimbursing the supplier for the ten percent that the supplier had already provided to Iraq. As a result of this conduct, the UN Escrow Account lost the benefit of more than $1 billion.

16.     After the United States invaded Iraq in March 2003, at the request of the provisional government, the UN ceased Iraq's ASSF scheme. The UN required that all

---

[1]     The side agreement was not provided to the UN when the Oil for Food contract was submitted and approved. This was in violation of the Program and U.S. and international trade sanctions against Iraq.

pending contracts that had been inflated by ten percent be amended to reflect the true contract value of the goods.

## II.    Akzo Nobel Subsidiaries Make Illicit Payments to Iraq

17.     While the Oil for Food Program was in effect, Akzo Nobel's Intervet and Organon subsidiaries utilized local agents and consultants in the Middle East to facilitate sales of pharmaceuticals to Iraq. Akzo Nobel subsidiaries Intervet and Organon acquiesced to the demands of the Iraqi Ministries and paid illegal ASSFs through third-party agents and consultants. Akzo Nobel's total profits from contracts in which illegal payments were made amounted to more than $1.6 million.

### A.    Intervet Authorizes $38,741 in Illicit Payments Through Its Agents.

18.     During the Program, Intervet conducted business in Iraq through two separate agents, Agent A and Agent B. They were paid jointly on all Iraqi contracts regardless of which agent secured the business. Prior to August 2000, each agent received a five percent fee. In August 2000, the agents' fees were reduced to 2.5 percent as a result of price pressures.

19.     Intervet entered into one contract during the time that Iraq was requiring payment of kickbacks. In September 2000, Agent A negotiated a contract with an Iraqi Ministry on behalf of Intervet. Agent A informed Intervet that the Iraqi Ministry required that Intervet make an additional five percent kickback under the contract. Intervet informed the agent that it refused to agree to make the payment. Agent A informed Intervet that he would "handle" the situation. At the contract signing on October 21, 2000, an Intervet employee who was aware of the kickback demand saw the agent deliver

6

an envelope to one of the Iraqi representatives. The Intervet employee did not ask the
agent about the contents of the envelope.

20.    Shortly thereafter, the agent informed the Intervet employees that he had
committed to make the five percent payment to the Iraqis and needed to be reimbursed.
In order to reimburse the agent for the payment while not accurately reflecting the true
purpose of the payment in the company's books and records, the Intervet employees
agreed to revert to Intervet's pre-August 2000 commission arrangement with Agent A
and Agent B, giving each agent a five percent commission. By doing so, the agents could
keep the 2.5 percent they were each entitled to receive and be reimbursed for the five
percent that they passed on to the Iraqi Ministry. In total, the Iraqi ministry received a
five percent ASSF payment on this contract. It is likely that Agent B agreed to give up
half of his five percent commission on the contract to reimburse Agent A for making the
illegal payment. In November 2001, Intervet received payment from the U.N. escrow
account for this contract.

21.    In connection with this contract, $38,741 in illegal ASSFs was paid to Iraq
through these agents. Intervet was aware of the payment, and reimbursed the agents for
the payment. Intervet took no action to notify the U.N. of the illegal payment, or to
sanction the agents or the employees involved. The payment was mischaracterized on
Intervet's books and records as a legitimate commission payment to the agents.

**B.    Organon Authorizes $240,750 in Illicit Payments Through Its Agent**

22.    Organon entered into three contracts that involved the payment of ASSF
payments to Iraqi ministries. Agent A, the same agent that worked on the Intervet
transaction, was involved in each of these transactions. Prior to these transactions, Agent

7

A was paid a five percent commission; however, his rate was raised to fifteen percent once the Iraqis began demanding ten percent ASSF payments in order to award Program contracts. Each of these three Organon contracts was negotiated by Agent A and an Organon employee. On the first contract, Organon and the Iraq ministry agreed on an initial contract price. However, when Organon prepared the contract documents that were approved by the U.N., Organon inflated the contract price by ten percent to cover the ASSF payment. On the two subsequent contracts, Organon simply agreed with the Iraqi ministry on an initial contract price that was inflated by ten percent, and then submitted that inflated contract price in the U.N. documents. An Organon employee created backdated price quotes that matched the pricing reflected in the three contracts.

23.     On the first contract, dated June 18, 2001, Agent A requested that Organon pay ten percent of his commission to an entity called "Sabbagh Drugstore." The payment was made in September 2001. On the remaining two contracts, both dated July 15, 2002, Agent A requested that Organon pay the extra ten percent commissions directly to an account in his name. The payments on both contracts were made on November 25, 2002. The Organon employees were aware that the contract price submitted to the U.N. was inflated by ten percent and that the increase in the agent's commission resulted in money going directly to the Iraqi Ministry of Health, also known as Kimadia.

24.     In connection with these three contracts, $240,750 in illegal ASSFs was paid to Iraq through this agent. Organon was aware of the payments, and even increased the agent's commission by ten percent to funnel the payment to Iraq. Organon did not disclose to the U.N. that it had inflated the contract price by ten percent to cover the ASSF payments. The payments were mischaracterized on Organon's books and records

8

as legitimate commission payments to the agent to conceal the true nature of the
payments.

### III.    Akzo Nobel's Failure to Maintain Adequate Internal Controls

25.    Akzo Nobel failed to maintain a system of internal controls sufficient to
ensure that the company's transactions under the Oil for Food Program were executed in
accordance with management's authorization and to maintain accountability for the
company's assets. As discussed above, Akzo Nobel's subsidiaries made several illicit
payments that contravened the Oil for Food Program, U.S. and international trade
sanctions, and its own internal FCPA and anti-bribery policies.

26.    Akzo Nobel's subsidiaries submitted contracts to the U.N. for approval,
which the subsidiaries knew were secretly inflated to cover the cost of illegal kickbacks
to Iraq. The subsidiaries also increased their agents' commissions as a means to funnel
payments to Iraq, while not accurately reflecting the purpose of those payments on its
books and records. In three transactions, a portion of the company's sale price for goods
to Iraq constituted illicit payments in violation of U.N. regulations and trade sanctions,
and also Akzo Nobel's FCPA and anti-bribery policies. In the fourth, a payment was
made to Iraq in connection with the contract in violation of U.N. regulations and trade
sanctions, and also Akzo Nobel's FCPA and anti-bribery policies. Moreover, as
evidenced by the extent and duration of the improper illicit payments made by two Akzo
Nobel subsidiaries and their agents, the improper recording of these payments in the
company's books and records, and the failure of Akzo Nobel's management to detect
these irregularities, Akzo Nobel failed to devise and maintain an effective system of

internal controls to prevent or detect these violations of the FCPA, as required by Exchange Act Section 13(b)(2)(B).

**V.    Akzo Nobel's Failure to Properly Maintain Its Books and Records**

27.    As described above, Akzo Nobel's accounting for its Oil for Food transactions failed properly to record the nature of the company's kickback payments. On three transactions, a portion of the company's sale price for goods to Iraq constituted ASSF payments in violation of U.N. regulations and trade sanctions, and also Akzo Nobel's FCPA and anti-bribery policies. A fourth contract involved a payment to Iraq in violation of U.N. regulations and trade sanctions, and also Akzo Nobel's FCPA and anti-bribery policies. The Akzo Nobel subsidiaries failed to properly designate the kickback payments made on its Program contracts, characterizing them as commission payments. Thus, Akzo Nobel failed to accurately record these payments in its books, records, and accounts to fairly reflect the transactions.

## CLAIMS FOR RELIEF

### FIRST CLAIM

#### [Violations of Section 13(b)(2)(A) of the Exchange Act]

28.    Paragraphs 1 through 27 are realleged and incorporated by reference.

29.    As described above, Akzo Nobel, through its officers, agents, consultants, representatives, and subsidiaries, failed to keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets.

30.    By reason of the foregoing, Akzo Nobel violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## SECOND CLAIM

### [Violations of Section 13(b)(2)(B) of the Exchange Act]

31.    Paragraphs 1 through 30 are realleged and incorporated by reference.

32.    As described above, with respect to illicit payments made in connection with Akzo Nobel's sales to Iraq, Akzo Nobel failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:  (i) payments were made in accordance with management's general or specific authorization; and (ii) payments were recorded as necessary to maintain accountability for its assets.

33.    By reason of the foregoing, Akzo Nobel violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

A.    Permanently restraining and enjoining Akzo Nobel from violating Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act  [15 U.S.C. §§ 78m(b)(2)(A) and (B)];

B.    Ordering Akzo Nobel to disgorge ill-gotten gains, with prejudgment interest, wrongfully obtained as a result of its illegal conduct;

C.    Ordering Akzo Nobel to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

D.   Granting such further relief as the Court may deem just and appropriate.

Dated:  December 20, 2007

Respectfully submitted,

Cheryl J. Scarboro (D.C. Bar No. 422175)
Tracy L. Price
Kelly G. Kilroy

Attorneys for Plaintiff,
U.S. Securities and Exchange Commission
100 F Street, NE
Mail Stop 6030 SPII
Washington, DC  20549-6030
(202) 551-4403 (Scarboro)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>           v.<br><br>AKZO NOBEL N.V.<br><br>                              Defendant. | Civil Action No._____ |

## CONSENT OF DEFENDANT AKZO NOBEL N.V.

1.      Defendant Akzo Nobel N.V. ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance in this action, and admits the Court's jurisdiction over Defendant in this action and over the subject matter of this action.

2.      Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)      permanently restrains and enjoins Defendant from violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act");

(b)      orders Defendant to pay disgorgement in the amount of $1,647,363, plus pre-judgment interest of $584,150; and

1

(c)    orders Defendant to pay a civil penalty in the amount of $750,000 under Section 21(d)(3) of the Exchange Act.

3.    Defendant agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors or others. Defendant further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors or others.

4.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.    Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

3

action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.    In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a

4

party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.


Dated: *19 December 2007*                    Akzo Nobel N.V.


                                             By: _____
                                             Name of person signing for entity
                                             Title: *Legal adviser*
                                             Address: *Van Tuyll·laan 10*
                                                      *3707 CW Re Netherlands*


        On *20 december*_____, 2007, _____, a person known to
me, personally appeared before me and acknowledged executing the foregoing Consent with full
authority to do so on behalf of Akzo Nobel N.V. as its _____.




                                             _____
                                             Notary Public
                                             Commission expires:


Approved as to form:

John L. Hardiman, Esquire
Sullivan & Cromwell LLP
One New Fetter Lane
London, EC4A 1AN, England
Attorney for Defendant


Seen for legalisation of the signature of Adrianus Johan Augustinus
Josephus Eijshouts
born at Heer, The Nederlands, on 19 of march 1945,
by me, **Franciscus Gerardus Bakker**,
civil-law notary, practising at Zeist, The Netherlands,
on 20 december  2007.
Dutch passportnumber: NF8865621



6



**Power of Attorney**

The undersigned,

Hans Wijers and Leif Darner,

Chairman and member of the Board of Management respectively of Akzo Nobel NV, a company organized and existing under the laws of The Netherlands, with registered office at Amsterdam, The Netherlands (hereinafter the "Company"), and in their respective capacities authorized by the Articles of Association to duly represent the Company for the purpose hereof,

**Herewith authorize**

Mr A. Jan A.J. Eijsbouts, legal adviser (the "Attorney")

To represent the Company and act on its behalf, and in his sole discretion, to negotiate, approve, and make the offer of settlement of the Company, attached hereto, to the United States Securities and Exchange Commission ("Commission") in connection with the investigation conducted by the Commission; in this connection, the Attorney is hereby authorized to undertake such actions as he may deem necessary and advisable, including the execution of such documentation as may be required by the Commission, in order to carry out the foregoing.

I witness whereof the undersigned have executed this power of attorney on December 18, 2007 at Amsterdam, The Netherlands.

Hans Wijers                                        Leif Darner

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>              v.<br><br>AKZO NOBEL N.V.,<br><br>                              Defendant. | Civil Action No. |

**FINAL JUDGMENT AS TO DEFENDANT AKZO NOBEL N.V.**

The Securities and Exchange Commission having filed a Complaint and Defendant Akzo

Nobel N.V. ("Akzo Nobel" or "Defendant") having entered a general appearance in this action;

consented to the Court's jurisdiction over Defendant in this action and the subject matter of this

action; consented to entry of this Final Judgment without admitting or denying the allegations of

the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and

waived any right to appeal from this Final Judgment:

I

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and

Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

13(b)(2)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15 U.S.C. § 78m(b)(2)(A), which requires an issuer subject to the Exchange Act to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

II

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), which requires an issuer subject to the Exchange Act to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

III

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $1,647,363, representing profits gained as a result of the conduct alleged in the Complaint, together with pre-judgment interest thereon in the amount of $584,150, and a civil penalty in the amount of $750,000 pursuant to Section 21(d)(3) of the Exchange Act,

15 U.S.C. § 78u(d)(3).  Defendant shall satisfy this obligation by paying $2,981,513 within ten

(10) business days after entry of this Final Judgment by certified check, bank cashier's check, or

United States postal money order payable to the Securities and Exchange Commission.  The

payment shall be delivered or mailed to the Office of Financial Management, Securities and

Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3,

Alexandria, Virginia 22312, and shall be accompanied by a cover letter identifying Akzo Nobel

N.V. as a defendant in this action; setting forth the title and civil action number of this action and

the name of this Court; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of the payment of disgorgement and

payment of civil penalty and letter to the Commission's counsel in this action.  By making these

payments, Defendant relinquishes all legal and equitable right, title, and interest in such funds,

and no part of the funds shall be returned to Defendant.  Defendant shall pay post-judgment

interest on any delinquent amounts pursuant to 28 USC § 1961.  The Commission shall remit the

funds paid pursuant to this paragraph to the United States Treasury.

## IV

        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

incorporated herein with the same force and effect as if fully set forth herein, and that Defendant

shall comply with all of the undertakings and agreements set forth therein.

3

V

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.


Dated: _____, _____


_____
UNITED STATES DISTRICT JUDGE

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| U.S. Securities & Exchange Commission<br>100 F. Street, NE<br>Washington, DC 20549-6030 | Akzo Nobel N.V.<br>Strawinskylaan 2555<br>1077 ZZ Amsterdam<br>The Netherlands |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ N/A
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)** | **ATTORNEYS (IF KNOWN)** |
|---|---|
| Cheryl J. Scarboro, Tracy L. Price, Kelly G. Kilroy<br>U.S. Securities & Exchange Commission<br>100 F Street, NE<br>Washington, DC 20549-6030<br>(202) 551-4403 (Scarboro) | John L. Hardiman, Esquire<br>Sullivan & Cromwell LLP<br>One New Fetter Lane<br>London, EC4A 1AN , England<br>011-44-207-959-8900 |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⊙ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ⊙ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ⊙ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☒ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

See Attachment A

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE _12-20-07_   SIGNATURE OF ATTORNEY OF RECORD _Chg J Bahr_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

Civil Cover Sheet Attachment A

**U.S. Securities and Exchange Commission v. Akzo Nobel N.V.**

**VI. Cause of Action**

This case is filed under the following civil statutes: 15 U.S.C. § 78u(d) - (e) (2006), and 15 U.S.C. § 78aa (2006).

This action arises from the defendant's violations of the following provisions of the Federal Securities laws: Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 [15 U.S.C. § 78m(b)(2)(A) and 15 U.S.C. § 78m(b)(2)(B)